IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-95

No. 473A20

Filed 27 August 2021

IN THE MATTER OF: D.M. & A.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1)–(2), (a2) from orders entered on 26 August 2019 and 5 August 2020 by Judge Amber Davis in District Court, Dare County. This matter was calendared for argument in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee Dare County Department of Health & Human Services, Division of Social Services.*

*No brief for appellee Guardian ad Litem.*

*Garron T. Michael for respondent-appellant father.*

EARLS, Justice.

Respondent-father appeals from the trial court's order terminating his parental rights in the minor children "David" and "Allison."[1] *See* N.C.G.S. § 7B-1001(a1)(1) (2019). Pursuant to N.C.G.S. § 7B-1001(a1)(2) and (a2), respondent-father also appeals from the permanency-planning order that eliminated reunification with respondent-father from the children's permanent plan. The

---

[1] We use these pseudonyms to protect the juveniles' identities and for ease of reading.

children's mother has relinquished her parental rights and is not a party to this appeal. We affirm.

On 1 May 2018, the Dare County Department of Health and Human Services, Division of Social Services (DSS), obtained nonsecure custody of six-year-old David and five-year-old Allison and filed juvenile petitions alleging they were neglected juveniles. After a hearing, the trial court entered an order on 9 August 2018 adjudicating the children as neglected juveniles based on respondents' stipulation to the following facts:

> 9.　On April 30, 2018, [the children's mother] left the juveniles at her home with two persons who are not appropriate caregivers. [Her] neighbors called the police because the juveniles were yelling out of the upstairs windows that they were hungry and afraid to go downstairs.

> 10.　Police performed a welfare check at [the children's mother's] home on April 30, 2018 after receiving calls from her neighbors. . . . Once the juveniles were secured, police searched [the] home. They found two small bags with a white powdery substance they believed to be cocaine in the juveniles' clothes and toy boxes. They found drug paraphernalia, including two burned pipes and two burned spoons. They also found about six grams of a powdery substance they believed to be cocaine in the freezer.

> 11.　[The children's mother] failed to properly feed the juveniles. The home she provided for the juveniles was filthy, unkempt, and unsafe. There was moldy food in the kitchen, garbage throughout the home, and no suitable beds for the juveniles to sleep on.

12.     When [the children's mother] arrived home, she told police that she had been on a date and had paid one of the individuals in the home $20.00 to watch the kids. She told police she had been gone for two hours and did not know who had been in her home. [She] was arrested and charged with possession of cocaine and possession of drug paraphernalia.

13.     [Respondent-father] had limited contact with the juveniles before the Juvenile Petition was filed. He has willingly left the juveniles in the care of [the children's mother].

14.     Neither [the children's mother] nor [respondent-father] have provided a safe, appropriate home for the juveniles.

15.     [The children's mother] and [respondent-father] have failed to provide proper care and supervision for the juveniles. They have exposed the juveniles to unsafe, injurious environments.

16.     The juveniles require more adequate care and supervision than [the children's mother] or [respondent-father] can provide in their homes.

In a disposition order entered on 6 November 2018, the trial court maintained the children in DSS custody and awarded respondent-father one hour per week of supervised visitation. The court found respondent-father had visited the children on two occasions since their placement in nonsecure custody but was arrested on 20 June 2018 and was facing "serious" felony drug and weapons charges in Pitt County, which could result in "a substantial prison sentence." The court ordered respondent-father to enter into a visitation plan with DSS "to establish a regular, consistent visitation schedule"; submit to random drug screens as requested by DSS and abstain from all

intoxicating substances; obtain a substance abuse assessment and comply with all treatment recommendations; and keep DSS apprised of his whereabouts and address.

¶ 4        At the initial permanency-planning hearing held on 6 February 2019, the trial court established a primary permanent plan for the children of reunification with the children's mother or respondent-father with a secondary plan of guardianship with a relative. The court maintained these primary and secondary plans at the next permanency-planning hearing held on 8 May 2019 and up to the permanency-planning hearing held on 7 August 2019.

¶ 5        However, in its permanency-planning order entered on 26 August 2019, the trial court changed the primary permanent plan to adoption, established a secondary plan of reunification with the children's mother, and relieved DSS of further reunification efforts with respondent-father. The court found that respondent-father had yet to enter into a case plan or visitation plan with DSS; he had submitted to a drug screen after a court appearance on 6 February 2019 and tested positive for marijuana and cocaine; he had scheduled an appointment for substance abuse treatment at PORT New Horizons but failed to attend the appointment; and he had been incarcerated since May 2019 for assaulting "his young paramour." The court also noted that respondent-father's felony drug and weapons charges in Pitt County remained pending. Respondent-father filed a timely notice to preserve his right to appeal the order eliminating reunification with him from the children's permanent

plan. *See* N.C.G.S. § 7B-1001(a1)(2)(a), (b) (2019).

¶ 6　　DSS filed a motion to terminate respondent-father's parental rights on 11 December 2019. The trial court held a hearing on the motion on 3 June and 1 July 2020 and entered its "Termination of Parental Rights Order" on 5 August 2020. In its order, the court adjudicated the existence of grounds to terminate respondent-father's parental rights for neglect, lack of reasonable progress, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(2), (6) (2019). The trial court further concluded that termination of respondent-father's parental rights was in both children's best interests. *See* N.C.G.S. § 7B-1110(a) (2019). Respondent-father filed timely notices of appeal from the termination order and from the order eliminating reunification with him from the permanent plan. *See* N.C.G.S. § 7B-1001(a1)(1)–(2), (b).

¶ 7　　Counsel for respondent-father has filed a no-merit brief on his client's behalf under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Counsel advised respondent-father of his right to file pro se written arguments on his own behalf and provided him with the documents necessary to do so. *See* N.C. R. App. P. 3.1(e). Respondent-father has not submitted written arguments to this Court.

¶ 8　　This Court independently reviews issues identified by counsel in a no-merit brief filed pursuant to Appellate Rule 3.1(e). *In re L.E.M.*, 372 N.C. 396, 402 (2019). Respondent-father's counsel has identified issues that could arguably support an appeal in this case while also explaining why, based on a careful review of the record,

these issues lack merit.

¶ 9 With regard to the order eliminating reunification from the permanent plan, counsel for respondent-father acknowledges that competent evidence supports the trial court's findings of fact and that the findings support the court's conclusion that further efforts to reunify David and Allison with respondent-father "would clearly be unsuccessful or inconsistent with the juveniles' need for a permanent pla[cement] within a reasonable period of time." *See* N.C.G.S. § 7B-906.2(b) (2019). At the time of the permanency-planning hearing respondent-father had made no meaningful steps toward reunification; he was incarcerated for a recent act of domestic violence; he had submitted to just one drug screen, which was positive for marijuana and cocaine; and he had failed to attend a scheduled appointment to begin substance abuse treatment. The trial court's ceasing of reunification efforts with respondent-father thus comports with the requirements of N.C.G.S. § 7B-906.2(b).

¶ 10 Turning to the termination order, counsel for respondent-father concedes that "the existence of a single ground for termination suffices to support the termination of a parent's parental rights in a child," *In re J.S.*, 2021-NCSC-28, ¶ 24, and that the evidence and the trial court's findings support a conclusion under N.C.G.S. § 7B-1111(a)(2) that respondent-father willfully left the children in a placement outside the home for more than twelve months without making reasonable progress to correct the conditions leading to their removal. Respondent-father's failure to comply with

the court's orders or address his substance abuse issues, as well as his continued involvement in criminal conduct and resulting incarceration, evinced a lack of reasonable progress since the children were removed from the children's mother's custody in May 2018. *See In re Z.K.*, 375 N.C. 370, 373 (2020). The trial court did not err in adjudicating the existence of grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(2).

¶ 11      Finally, the trial court made written findings addressing each of the factors relevant to disposition under N.C.G.S. § 7B-1110(a). As counsel for respondent-father admits, the findings provide a rational basis for the trial court's assessment that terminating respondent-father's parental rights was in the children's best interests in that it will facilitate the children's adoption by their maternal aunt and uncle. We further note these findings are supported by competent evidence presented at the termination hearing. Accordingly, we conclude the trial court did not abuse its discretion during the dispositional stage of the proceeding by choosing to terminate respondent-father's parental rights. *In re Z.K.*, 375 N.C. at 373, 847 S.E.2d at 749.

¶ 12      Having considered the entire record and the issues identified in the no-merit brief, we affirm the trial court's order eliminating reunification from the permanent plan and the trial court's order terminating respondent-father's parental rights.

AFFIRMED.